**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

|  |  |
|---|---|
| PROXENSE, LLC,<br><br>                         Plaintiff<br><br>        -against-<br><br>HYUNDAI MOTOR COMPANY,<br>HYUNDAI MOTOR AMERICA, GENESIS<br>MOTOR AMERICA LLC, KIA<br>CORPORATION, and KIA AMERICA,<br>INC.,<br>                  Defendants. | Civil Action No.: 6:25-cv-00016<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Proxense, LLC ("Proxense" or "Plaintiff"), by way of this Complaint against Defendants Hyundai Motor Company, Hyundai Motor America, Genesis Motor America LLC, Kia Corporation, and Kia America, Inc., (collectively "Defendants"), alleges as follows:

**PARTIES**

1.      Plaintiff Proxense, LLC is a Delaware company with its principal place of business at 689 NW Stonepine Drive, Bend, Oregon 97703.

2.      On information and belief, Defendant Hyundai Motor Company ("Hyundai-KR") is a corporation organized and existing under the laws of South Korea, having its principal place of business at 12 Heolleung-ro, Seocho-gu, Seoul, 06797, South Korea. On information and belief, Hyundai-KR operates in the United States, including in the State of Texas and this Judicial District, directly or through its subsidiaries, affiliates, and/or intermediaries.

3.      On information and belief, Defendant Hyundai Motor America ("Hyundai-US") is a corporation organized and existing under the laws of the State of California, having its principal place of business at 10550 Talbert Ave, Fountain Valley, CA 92708 and a place of business at Hyundai Southern Central Regional Office, 1421 S Belt Line Rd, Coppell, TX 75019. On information and belief, Hyundai-US is a wholly owned subsidiary of Hyundai-KR. Hyundai-US may be served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX, 78701. On information and belief, Hyundai-US is registered to do business in the State of Texas and has been since at least May 13, 1986. Hyundai-KR and Hyundai-US are collectively referred to herein as "Hyundai."

4.      On information and belief, Defendant Genesis Motor America LLC ("Genesis") is a wholly owned subsidiary of Hyundai-US and engages in sales of Genesis brand vehicles. On information and belief, Genesis is a limited liability company organized under the laws of the State of California with its principal place of business at 10550 Talbert Avenue, Fountain Valley, CA 92708. On information and belief, Genesis may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Inc., located at 211 E. 7th Street, Suite 620, Austin TX 78701. On information and belief, Genesis is registered to do business in the State of Texas and has been since at least August 14, 2018.

5.      On information and belief, Defendant Kia Corporation ("Kia-KR") is a corporation organized and existing under the laws of South Korea, having its principal place of business at 12 Heolleung-ro, Seocho-gu, Seoul, 06797, South Korea. On information and belief, Kia-KR is minority-owned (33.88 percent) by Hyundai-KR, and in turn, Kia-KR is a minority owner of more than twenty Hyundai-KR subsidiaries. On information and belief, Kia-KR operates in the United States, including in the State of Texas and this Judicial District, directly or through its subsidiaries,

affiliates, and/or intermediaries.

6.     On information and belief, Defendant Kia America, Inc. ("Kia-US") is a corporation organized and existing under the laws of the State of California, having its principal place of business at 111 Peters Canyon Rd, Irvine, CA 92606 and a place of business at Kia Southwest Regional Office, 5810 Tennyson Pkwy #400, Plano, TX.  On information and belief, Kia-US is a wholly owned subsidiary of Kia-KR.  Kia-US may be served through its registered agent CT Corporation System, 999 Bryan St., Ste. 900, Dallas, TX, 75201.  On information and belief, Kia-US is registered to do business in the State of Texas and has been since at least May 26, 1994. Kia-KR and Kia-US are collectively referred to herein as "Kia."

7.     On information and belief, Defendant Hyundai-KR is the ultimate parent company of Hyundai-US and Genesis, and as the ultimate parent, induces its subsidiaries, affiliates, intermediaries, retail partners, and customers in the making, using, selling, offering for sale, and/or importing of products accused of infringement in this Complaint through its subsidiaries.

8.     On information and belief, Hyundai-KR, Hyundai-US, and Genesis (and their subsidiaries, affiliates and/or intermediaries) form an interrelated group of companies doing business as a collective whole under the Hyundai/Genesis brands which together comprise one of the largest makers and sellers of automotive vehicles in the world.  Hyundai-KR, Hyundai-US, and Genesis are part of the same corporate structure and distribution chain for the making, using, selling, offering for sale, and/or importing the accused products in the United States, including in the State of Texas generally and this Judicial District in particular.  On information and belief, Hyundai-KR, Hyundai-US, and Genesis (and their subsidiaries, affiliates and/or intermediaries) share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused vehicles models and vehicles involving related technologies.  Thus, Hyundai-KR, Hyundai-US, and Genesis (and their subsidiaries, affiliates and/or

intermediaries) operate as a unitary business and are jointly and severally liable for the acts of patent infringement alleged herein.

9.     On information and belief, Defendant Kia-KR is the parent company of Kia-US, and as the parent, induces its subsidiaries, affiliates, intermediaries, retail partners, and customers in the making, using, selling, offering for sale, and/or importing of products accused of infringement in this Complaint through its subsidiaries.

10.     On information and belief, Kia-KR and Kia-US (and their subsidiaries, affiliates and/or intermediaries) form an interrelated group of companies doing business as a collective whole under the Kia brand which together comprise one of the largest makers and sellers of automotive vehicles in the world.  Kia-KR and Kia-US are part of the same corporate structure and distribution chain for the making, using, selling, offering for sale, and/or importing the accused products in the United States, including in the State of Texas generally and this Judicial District in particular.  On information and belief, Kia-KR and Kia-US (and their subsidiaries, affiliates and/or intermediaries) share the same management, common ownership, advertising platforms, facilities, distribution chains and platforms, and accused vehicles models and vehicles involving related technologies.  Thus, Kia-KR and Kia-US (and their subsidiaries, affiliates and/or intermediaries) operate as a unitary business and are jointly and severally liable for the acts of patent infringement alleged herein.

11.     On information and belief, Defendant Hyundai-KR is Defendant Kia-KR's largest shareholder owning 33.88 percent of Kia-KR. Further, on information and belief, Kia-KR is a minority owner of 22 Hyundai-KR subsidiary companies ranging from 4.9 percent to 45.37 percent. Hyundai-KR (and its subsidiaries, affiliates and/or intermediaries) and Kia-KR (and its subsidiaries, affiliates and/or intermediaries) (collectively, "Hyundai-Kia") are strongly affiliated and operate as a joint partnership/conglomerate by comingling ownership and sharing

management, facilities, advertising platforms, distribution chains, development processes, and incorporating substantially similar systems.

12.    On information and belief, Hyundai-Kia do business themselves, or through their subsidiaries, affiliates, and/or intermediaries, in the State of Texas and the Western District of Texas.  Hyundai-Kia placed or contributed to placing infringing products, including one or more of those specifically accused of infringement below, into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in, and imported into, the United States, including in the Western District of Texas.

13.    On information and belief, Hyundai-Kia have derived substantial revenue from infringing acts in the Western District of Texas, including from the sale and use of these infringing products like those specifically accused of infringement below.

## JURISDICTION AND VENUE

14.    This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

15.    Hyundai-KR is subject to personal jurisdiction of this Court because, *inter alia*, on information and belief, (i) Hyundai-KR, directly or through affiliates, subsidiaries, agents, or intermediaries, has committed and continues to commit acts of patent infringement in the State of Texas, including by making, using, offering to sell, selling, and/or importing the accused

products into Texas; (ii) Hyundai-KR, directly or through affiliates, subsidiaries, agents, or intermediaries, purposefully supplies and directs the accused products for storage, inventory, and sales by distributors and resellers in the State of Texas; and (iii) Hyundai-KR, directly or through affiliates, subsidiaries, agents, or intermediaries, delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the State of Texas. For example, Hyundai-KR's vehicles have been sold and are available for sale in this District at numerous dealerships. In addition, or in the alternative, this Court has personal jurisdiction over Hyundai-KR pursuant to Fed. R. Civ. P. 4(k)(2).

16.    Venue is proper as to Hyundai-KR in this District under 28 U.S.C. § 1391(c) because, *inter alia*, Hyundai-KR is a foreign corporation.

17.    Hyundai-US and Genesis are subject to personal jurisdiction of this Court because, *inter alia*, on information and belief, (i) Hyundai-US and Genesis, directly or through its subsidiaries, affiliates, and/or intermediaries, maintain a regular and established place of business in Texas in this Judicial District; (ii) Hyundai-US and Genesis employ employees and sell products and services to customers in this Judicial District; and (iii) the patent infringement claims arise directly from Hyundai-US and Genesis' continuous and systematic activity in this Judicial District.

18.    Venue is proper as to Hyundai-US and Genesis in this Judicial District under 28 U.S.C. § 1400(b) because, *inter alia*, on information and belief, Hyundai-US and Genesis, directly or through its subsidiaries, affiliates, and/or intermediaries, maintain a regular and established place of business in Texas in this Judicial District, and has committed acts of patent infringement in this Judicial District and/or has contributed to or induced acts of patent infringement by others in this Judicial District.

19.    Kia-KR is subject to personal jurisdiction of this Court because, *inter alia*, on information and belief, (i) Kia-KR, directly or through affiliates, subsidiaries, agents, or intermediaries, has committed and continues to commit acts of patent infringement in the State of Texas, including by making, using, offering to sell, selling, and/or importing the accused products into Texas; (ii) Kia-KR, directly or through affiliates, subsidiaries, agents, or intermediaries, purposefully supplies and directs the accused products for storage, inventory, and sales by distributors and resellers in the State of Texas; and (iii) Kia-KR, directly or through affiliates, subsidiaries, agents, or intermediaries, delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the State of Texas. For example, Kia-KR's vehicles have been sold and are available for sale in this District at numerous dealerships. In addition, or in the alternative, this Court has personal jurisdiction over Kia-KR pursuant to Fed. R. Civ. P. 4(k)(2).

20.    Venue is proper as to Kia-KR in this District under 28 U.S.C. § 1391(c) because, *inter alia*, Kia-KR is a foreign corporation.

21.    Kia-US is subject to personal jurisdiction of this Court because, *inter alia*, on information and belief, (i) Kia-US, directly or through its subsidiaries, affiliates, and/or intermediaries, maintains a regular and established place of business in Texas in this Judicial District; (ii) Kia-US employs employees and sells products and services to customers in this Judicial District; and (iii) the patent infringement claims arise directly from Kia-US's continuous and systematic activity in this Judicial District.

22.    Venue is proper as to Kia-US in this Judicial District under 28 U.S.C. § 1400(b) because, *inter alia*, on information and belief,  Kia-US, directly or through its subsidiaries, affiliates, and/or intermediaries, maintains a regular and established place of business in Texas in this Judicial District, and has committed acts of patent infringement in this Judicial District and/or

has contributed to or induced acts of patent infringement by others in this Judicial District.

**PATENTS-IN-SUIT**

23.    On September 11, 2018, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 10,073,960 ("the 960 Patent"), entitled "Hybrid Device Having a Personal Digital Key and Receiver-Decoder Circuit and Methods of Use." A true and correct copy of the 960 Patent is attached hereto as **Exhibit 1**.

24.    On February 2, 2016, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 9,251,332 ("the 332 Patent"), entitled "Security System and Method for Controlling Access to Computer Resources." A true and correct copy of the 332 Patent is attached hereto as **Exhibit 2**.

25.    On September 20, 2016, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 9,450,956 ("the 956 Patent"), entitled "Proximity-Based System for Automatic Application Initialization." A true and correct copy of the 956 Patent is attached hereto as **Exhibit 3**.

26.    On August 17, 2021, the United States Patent and Trademark Office duly and lawfully issued U.S. Patent No. 11,095,640 ("the 640 Patent"), entitled "Proximity-Based System for Automatic Application or Data Access and Item Tracking." A true and correct copy of the 640 Patent is attached hereto as **Exhibit 4**.

27.    Proxense is the sole and exclusive owner of all right, title and interest to and in, or is the exclusive licensee with the right to sue for, the 960, 332, 956, and 640 Patents (together, the "Patents-in-Suit"), and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. Proxense also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

28.     The 960 Patent generally covers systems and methods for personal digital keys and corresponding sensors, capable of proximity detection/location determination and auxiliary data services/application services, wherein an integrated, wireless communication interface communicating wirelessly with the at least one external device within a proximity zone enables one or more of an application, a function, and a service.

29.     The 332 Patent generally covers systems and methods for controlling access to computing resources, which further comprises controlling whether access to a computing resource is permitted based on detecting a personal digital key within a predefined range of a reader and based on security set up data.

30.     The 956 Patent generally covers systems and methods for automatic and secure authentication of users, wherein a first user is permitted access to a shared computing device in use by a second user based on determining a priority level relative to the second user.

31.     The 640 Patent generally covers systems and methods for automatic access to applications or data while maintaining application or data security, wherein an authentication server is configured to log out a user after a personal digital key exceeds a defined proximity away from a device with a reader that communicates wirelessly with the personal digital key.

## **FACTUAL ALLEGATIONS**

### I.    **PROXENSE AND ITS INNOVATIVE TECHNOLOGIES**

32.     Proxense was founded in 2001 as a limited venture. The company was formally incorporated in 2005 as an LLC. From approximately 2004-2012, Proxense developed, *inter alia*, mobile payment technologies and commercial products, employing over thirty engineers, and investing many millions of dollars in product development and other research and development efforts. Foundational capabilities of Proxense's technologies included a secure element, biometrics captured and stored thereon, retrieval of biometrics and token passing to a trusted third

party, and completion of a mobile payment transaction.

33.    Proxense also developed sophisticated, proprietary, proximity-based detection, authentication, and automation technology, built on the concept of utilizing small electronic sensors, or receiver-decoder circuits ("RDCs"), capable of wirelessly detecting, authenticating, and communicating with personal digital keys ("PDKs"). Significant financial and engineering resources were deployed to make this possible. The resulting developments became primary differentiators of Proxense's product line, and significant elements on which its business was built.

34.    John Giobbi is the founder and CEO of Proxense. He is an experienced product designer and prolific inventor (a named inventor on approximately 200 patents), with over 35 years of experience as an entrepreneur and product development executive. For example, Mr. Giobbi was a Senior Vice President at WMS Gaming, and managed over 200 staff; in his six-year tenure at that company, its market capitalization soared from approximately $80 million to about $1 billion. Mr. Giobbi was also the founder and President of Prelude Technology Corp. and InPen.

35.    Today, Proxense holds at least 65 patents on related technology, including digital content distribution, digital rights management, personal authentication, biometric data management and mobile payments. Proxense continues to prosecute new patents on its proprietary technology.

## II.    THE ACCUSED TECHNOLOGY

36.    On information and belief, the Defendants use digital key technology based on their membership to the Car Connectivity Consortium ("CCC"). As purported by the CCC, the CCC brings automotive and consumer technology industries together to future-proof vehicle access using smart devices.[1] The CCC's vision is allegedly to be the trusted source for defining how vehicles interact with devices and the world to improve the consumer experience. *Id*. The CCC

---

[1] https://carconnectivity.org/about/

states its mission is to standardize the connected ecosystem around vehicles and devices with solutions that combine convenience, security, and privacy protections. *Id.*

37.     To serve its vision and mission, the CCC implemented a Digital Key technology. As stated by the CCC, the CCC Digital Key is a standardized ecosystem that enables mobile devices to store, authenticate, and share Digital Keys for vehicles in a secure, privacy-preserving way that works everywhere, even when the smartphone's battery is low. **Exhibit 5,** p.4. The CCC Digital Key allows consumers to use their mobile devices to access vehicles. *Id.* Along with robust capability and convenience, the CCC Digital Key allegedly offers enhanced security and privacy protections. The CCC Digital Key aims to complement traditional methods, while being robust enough to fully replace them. *Id.* However, it is this very CCC Digital Key technology and ecosystem that infringes the Patents-in-Suit.

38.     On information and belief, the CCC's Digital Key Release 1.0 specification, that was first enacted in 2018, involved tagging a card key or smartphone key in proximity using Near Field Communication® (NFC) technology. The Digital Key Release 2.0 specification enabled NFC or BLE to send control signals remotely and share a digital key with other drivers. Then, in 2021, the CCC enacted the Digital Key Release 3.0 specification that added location-aware features using NFC, UWB, and BLE to get more accurate locations of smartphone devices.

39.     The CCC Digital Key uses NFC technology for contactless communication between smartphones and vehicles. **Exhibit 6,** p.5. The most recent CCC Digital Key Release 3.0 adds hands-free, location-aware keyless access and location-aware features. *Id.* This has been achieved using Ultra-Wideband (UWB) in combination with Bluetooth Low Energy® connectivity. The CCC Digital Key maintains support for NFC technology to ensure backward compatibility. *Id.*

40.     The CCC Digital Key may be used by simply placing a mobile device near the

vehicle's NFC reader. *Id*. at p.7. The wireless interface for direct communication between the vehicle and mobile device is used to complete the authentication protocol, securely exchange information, pair a mobile device with the vehicle, and ensure that the mobile device is within proximity of the vehicle. *Id*. at p.14.

41.    The CCC Digital Key may be used to access a vehicle via hands-free passive keyless entry, start the engine, immobilize the vehicle, or authorize any other operation or access to vehicle resources. *Id*. at p.7. No interaction with the mobile device is needed, for example activating an app, and the smartphone can stay in the user's pocket. *Id*. To provide hands-free access, the mobile device and vehicle mutually authenticate, and the vehicle verifies that the mobile device's CCC Digital Key authorizes the requested operation. *Id*.

42.    Each CCC Digital Key contains a number of attributes and authorizations, encapsulated in standard access entitlement profiles, that describe how and when it may be used. *Id*. at p.11. These properties allow each CCC Digital Key to be customized, enabling new use cases, features, and personalization. *Id*. In addition to standard properties, custom entitlements (provided by the vehicle OEM) may also be used to enable additional use cases or to include service-specific information. *Id*. For example, an owner may restrict how the shared CCC Digital Key may be used; adjust the maximum speed for a particular driver; only allow access to the trunk or a particular compartment (and not access the vehicle cabin or other compartments, such as for delivery or pick-up services); allow cabin access, but not engine start or mobilization; and so on. *Id*.

43.    As shown in Figure 1 below, the CCC Digital Key ecosystem consists of vehicles, vehicle OEM servers, mobile devices, and mobile device OEM servers – all communicating with each other using a combination of standardized and proprietary interfaces. *Id*. at 12.



Figure 1: CCC Digital Key ecosystem

44.

45.     *Id*. at p.13. Interoperability between mobile devices and vehicles is supported by standardizing the vehicle-to-device interface – the communication channel (NFC, BLE and UWB), protocols, and digital key structures. *Id*. The vehicle-to-device interface provides a mutually-authenticated, secure communication channel that protects the user's privacy by exposing their mobile device's identity only to trusted vehicles after they have been authenticated. *Id*. Device and vehicle OEM servers support interoperability by abstracting the details of managing mobile devices and vehicles from each other; the interface between them provides a standardized way to manage CCC Digital Keys and to provide customer services. *Id*.

## III.     ACCUSED PRODUCTS

46.     On information and belief, the Defendants are members of the CCC (**Exhibit 7**) and currently have the CCC Digital Key technology incorporated in their vehicles. *See* **Exhibits 8-10**. As such, the Accused Products include (1) the Defendants' manufactured vehicles ("Accused Vehicles") and (2) their OEM servers as depicted in the CCC Digital Key Ecosystem. **Exhibit 6**, Fig. 1.

47.    On information and belief, the Defendants currently use "Digital Key 2" technology, which "works with all new Hyundai, Kia, and Genesis vehicles" and "older models" being able to use some features of Digital Key 2 after a software update.[2] Accordingly, the Accused Vehicles include, but are not limited to, the following vehicle models manufactured by the Defendants (including any prior/current/future versions, classes, or fuel types (gas, hybrid, or electric)): Hyundai Elantra, Hyundai Ioniq, Hyundai Kona, Hyundai Nexo, Hyundai Palisade, Hyundai Santa Cruz, Hyundai Sonata, Hyundai Sante Fe, Hyundai Tucson, Hyundai Venue, Genesis G70, Genesis G80, Genesis G90, Genesis GV60, Genesis GV70, Genesis GV80, Kia Cadenza, Kia Carnival, Kia EV6, Kia EV9, Kia Forte, Kia K4, Kia K5, Kia K900, Kia Niro, Kia Rio, Kia Seltos, Kia Sorento, Kia Soul, Kia Sportage, Kia Stinger, and Kia Telluride. The Accused Vehicles also include models of Defendants' vehicles that use any Digital Keys prior to Digital Key 2 and future versions of Digital Keys that infringe any of the Patents-in-Suit.

## COUNT I: INFRINGEMENT OF THE 960 PATENT BY DEFENDANTS

48.    Proxense repeats and realleges all preceding paragraphs, as if fully set forth herein.

49.    Proxense has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or important any products that embody the inventions of the 960 Patent.

50.    Defendants infringe at least claims 1, 2, 13-15, and 20 of the 960 Patent in violation of 35 U.S.C. § 271 with respect to the Accused Products.  Proxense contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

51.    For example, Defendants directly infringe at least claim 1 of the 960 Patent by making, using, selling, and/or offering to sell the Accused Products within the United States.  The Accused Vehicles include a battery and an integrated, secure memory storing local, secured

---

[2] https://www.hyundaiofmankato.com/hyundais-digital-key-program-expands/#:~:text=The%20Digital%20Key%202%20system,features%20after%20a%20software%20update

information.

52.     The Accused Vehicles further include an integrated, wireless communication interface for communicating wirelessly with a user's smartphone with a CCC Digital Key within a proximity zone, the integrated, wireless communication interface communicatively coupled to the integrated, secure memory and coupled to draw power from the battery.

53.     The Accused Vehicles are also configured such that the integrated, wireless communication interface communicating wirelessly with the user's smartphone within the proximity zone enables one or more of an application, a function, and a service within the Accused Vehicle.

54.     Defendants have induced infringement of one or more claims of the 960 Patent under 35 U.S.C. § 271(b), by sellers, resellers and end-user customers who sell or use the Accused Products.

55.     Defendants also contribute to infringement by others of one or more claims of the 960 Patent under 35 U.S.C. § 271(c), such as sellers, resellers and end-user customers who directly infringe the 960 Patent when they sell or use the Accused Products.

56.     Defendants received constructive notice of the 960 Patent at least as early as September 11, 2018 and actual notice of the 456 Patent as of the date of this Complaint. Defendants performed and continue to perform the acts that constitute direct and/or indirect infringement, with knowledge or willful blindness that the acts would constitute direct and/or indirect infringement of the 960 Patent.

57.     Defendants do so knowingly and with intent to commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the accused product(s), despite its knowledge of the 960 Patent, thereby specifically intending to infringe the 960 Patent.

58.     Proxense has been injured and seeks damages to adequately compensate it for

Defendants' infringement of the 960 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

59.    Upon information and belief, Defendants will continue to infringe the 960 Patent unless permanently enjoined by this Court.  Pursuant to 35 U.S.C. § 283, Proxense is entitled to a permanent injunction against further infringement of the 960 Patent by Defendants.

## COUNT II: INFRINGEMENT OF THE 332 PATENT BY DEFENDANTS

60.    Proxense repeats and realleges all preceding paragraphs, as if fully set forth herein.

61.    Proxense has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or important any products that embody the inventions of the 332 Patent.

62.    Defendants infringe at least claims 10-12, 14-16, and 21-23 of the 332 Patent in violation of 35 U.S.C. § 271 with respect to the Accused Products.  Proxense contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

63.    For example, Defendants directly infringe at least claim 10 of the 332 Patent by making, using, selling, and/or offering to sell the Accused Products within the United States.  The Accused Products include a detection engine for detecting when a vehicle resource is accessed and controlling whether access is permitted based on detecting a CCC Digital Key is within a predefined range of a reader of the Accused Vehicle.

64.    The Accused Products further include a vault storage for storing security set up data for the vehicle resources, the vault storage stored in a dedicated encrypted portion of a memory of the Accused Vehicle and including information on how to use security data of the CCC Digital Key to control access to the vehicle resources.

65.    The Accused Products are also configured such that the security set up data is based on one or more user defined options allowing a user to implement different security actions for

different vehicle resources, wherein the different security actions include a biometric confirmation for a respective vehicle resource.

66.    The Accused Products are further configured such that the security set up data specifies at least one security action for the accessed vehicle resource, the at least one security action including an exit-based rule to terminate access to the vehicle resource when the CCC Digital Key and the reader are no longer within the predefined range.

67.    Defendants have induced infringement of one or more claims of the 332 Patent under 35 U.S.C. § 271(b), by sellers, resellers and end-user customers who sell or use the Accused Products.

68.    Defendants also contribute to infringement by others of one or more claims of the 332 Patent under 35 U.S.C. § 271(c), such as sellers, resellers and end-user customers who directly infringe the 332 Patent when they sell or use the Accused Products.

69.    Defendants received constructive notice of the 960 Patent at least as early as February 2, 2016 and actual notice of the 332 Patent as of the date of this Complaint. Defendants performed and continue to perform the acts that constitute direct and/or indirect infringement, with knowledge or willful blindness that the acts would constitute direct and/or indirect infringement of the 332 Patent.

70.    Defendants do so knowingly and with intent to commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the accused product(s), despite its knowledge of the 332 Patent, thereby specifically intending to infringe the 332 Patent.

71.    Proxense has been injured and seeks damages to adequately compensate it for Defendants' infringement of the 332 Patent. Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

72.    Upon information and belief, Defendants will continue to infringe the 332 Patent

unless permanently enjoined by this Court.  Pursuant to 35 U.S.C. § 283, Proxense is entitled to a

permanent injunction against further infringement of the 332 Patent by Defendants.

### COUNT III: INFRINGEMENT OF THE 956 PATENT BY DEFENDANTS

73.    Proxense repeats and realleges all preceding paragraphs, as if fully set forth herein.

74.    Proxense has not licensed or otherwise authorized Defendants to make, use, offer

for sale, sell, or important any products that embody the inventions of the 956 Patent.

75.    Defendants infringe at least claims 7, 16, and 17 of the 956 Patent in violation of

35 U.S.C. § 271 with respect to the Accused Products.  Proxense contends each limitation is met

literally, and, to the extent a limitation is not met literally, it is met under the doctrine of

equivalents.

76.    For example, Defendants directly infringe at least claim 7 of the 956 Patent by

making, using, selling, and/or offering to sell the Accused Products within the United States.  The

Accused Products detect a first CCC Digital Key associated with a first user in a proximity zone

of a reader of an Accused Vehicle, the first user having a first user priority, the first CCC Digital

Key comprising information regarding the first user priority.

77.    The Accused Products further provide the first user access to the Accused Vehicle

associated with the reader.

78.    The Accused Products are also configured such that when a second CCC Digital

Key associated with a second user in the proximity zone that was non-present during the detection

of the first CCC Digital Key, the second user is provided access to the Accused Vehicle based on

determining the second user priority level relative to priority level of the first user.

79.    Defendants have induced infringement of one or more claims of the 956 Patent

under 35 U.S.C. § 271(b), by sellers, resellers and end-user customers who sell or use the Accused

Products.

80.     Defendants also contribute to infringement by others of one or more claims of the 956 Patent under 35 U.S.C. § 271(c), such as sellers, resellers and end-user customers who directly infringe the 956 Patent when they sell or use the Accused Products.

81.     Defendants received constructive notice of the 956 Patent at least as early as September 20, 2016 and actual notice of the 956 Patent as of the date of this Complaint. Defendants performed and continue to perform the acts that constitute direct and/or indirect infringement, with knowledge or willful blindness that the acts would constitute direct and/or indirect infringement of the 956 Patent.

82.     Defendants do so knowingly and with intent to commit these infringing acts. Defendants also continue to make, use, offer for sale, sell, and/or import the accused product(s), despite its knowledge of the 956 Patent, thereby specifically intending to infringe the 956 Patent.

83.     Proxense has been injured and seeks damages to adequately compensate it for Defendants' infringement of the 956 Patent. Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

84.     Upon information and belief, Defendants will continue to infringe the 956 Patent unless permanently enjoined by this Court. Pursuant to 35 U.S.C. § 283, Proxense is entitled to a permanent injunction against further infringement of the 956 Patent by Defendants.

**COUNT IV: INFRINGEMENT OF THE 640 PATENT BY DEFENDANTS**

85.     Proxense repeats and realleges all preceding paragraphs, as if fully set forth herein.

86.     Proxense has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or important any products that embody the inventions of the 640 Patent.

87.     Defendants infringe at least claim 17 of the 640 Patent in violation of 35 U.S.C. § 271 with respect to the Accused Products. Proxense contends each limitation is met literally, and, to the extent a limitation is not met literally, it is met under the doctrine of equivalents.

88.    For example, Defendants directly infringe at least claim 17 of the 640 Patent by making, using, selling, and/or offering to sell the Accused Products within the United States.  The Accused Products include a reader of an Accused Vehicle configured to wirelessly communicate with a CCC Digital Key when the CCC Digital Key is proximal to the reader, the CCC Digital Key including a profile uniquely associated with a user authorized to use an Accused Vehicle when the CCC Digital Key is proximal to the Accused Vehicle.

89.    The Accused Products further include an authentication server coupled to the reader and to the Accused Vehicle, the authentication server configured to log out the user after the CCC Digital Key exceeds a defined proximity to the Accused Vehicle.

90.    Defendants have induced infringement of one or more claims of the 640 Patent under 35 U.S.C. § 271(b), by sellers, resellers and end-user customers who sell or use the Accused Products.

91.    Defendants also contribute to infringement by others of one or more claims of the 640 Patent under 35 U.S.C. § 271(c), such as sellers, resellers and end-user customers who directly infringe the 332 Patent when they sell or use the Accused Products.

92.    Defendants received constructive notice of the 640 Patent at least as early as August 17, 2021 and actual notice of the 640 Patent as of the date of this Complaint.  Defendants performed and continue to perform the acts that constitute direct and/or indirect infringement, with knowledge or willful blindness that the acts would constitute direct and/or indirect infringement of the 640 Patent.

93.    Defendants do so knowingly and with intent to commit these infringing acts.  Defendants also continue to make, use, offer for sale, sell, and/or import the accused product(s), despite its knowledge of the 640 Patent, thereby specifically intending to infringe the 640 Patent.

94.    Proxense has been injured and seeks damages to adequately compensate it for

Defendants' infringement of the 640 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

95.    Upon information and belief, Defendants will continue to infringe the 640 Patent unless permanently enjoined by this Court.  Pursuant to 35 U.S.C. § 283, Proxense is entitled to a permanent injunction against further infringement of the 640 Patent by Defendants.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Fed. R. Civ. Proc., Plaintiff hereby demands trial by jury in this action of all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Proxense prays for judgment in its favor against Defendants for the following relief:

96.    Entry of judgment in favor of Proxense against Defendants on all counts;

97.    Entry of judgment that Defendants have infringed the Patents-in-Suit;

98.    Entry of judgment that Defendants' infringement of the Patents-in-Suit has been willful;

99.    Award of compensatory damages adequate to compensate Proxense for Defendants' infringement of the Patents-in-Suit, in no event less than a reasonable royalty, including supplemental damages post-verdict, together with pre-judgment and post-judgment interest and costs;

100.    Enhanced damages pursuant to 35 U.S.C. § 284;

101.    Entry of judgment declaring that this case is exceptional and awarding Proxense its costs and reasonable attorney fees pursuant to 35 U.S.C. § 285; and

102.    All such other and further relief as the Court deems just or equitable.

Dated: January 14, 2025                    Respectfully submitted,

/s/ David L. Hecht
David L. Hecht
dhecht@hechtpartners.com
Hecht Partners LLP
125 Park Avenue, 25th Floor
New York, NY 10017
P: (212) 851-6821
dhecht@hechtpartners.com

ATTORNEYS FOR PLAINTIFF
Proxense, LLC